THIS OPINION IS A PRECEDENT
OF
THE T.T.A.B.

Mailed:  May 31, 2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Renaissance Rialto Inc.[1]
v.
Ky Boyd

_____

Opposition No. 91197602
to Application No. 85007256

_____

William J Arnone Jr. of Merrill Arnone & Jones LLP, for Renaissance Rialto Inc.

Cyrus Wadia of Cooper White & Cooper LLP, for Ky Boyd.

_____

Before Bergsman, Ritchie, and Adlin, Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Renaissance Rialto Inc. (opposer) has brought this proceeding in opposition to the registration by Ky Boyd (applicant) of the mark "RIALTO CINEMAS," in standard characters, for "movie theaters"[2] in International Class 41.

---

[1] Asserted successor to the interest of Lakeside Cinema Partners, LLC for the rights involved in this case.

[2] Application No. 85007256, filed April 6, 2010, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging first use and first use in commerce on January 4, 2000.

The application claims acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), and applicant disclaims the exclusive right use the term "CINEMAS" apart from the mark as a whole.

Opposer initiated the opposition on November 23, 2010, pleading claims in the alternative. In the notice of opposition, opposer alleges that the applied-for mark "so resembles Opposer's mark previously used in the United States, and not abandoned, as to be likely to cause confusion, or to cause mistake, or to deceive." Notice, at Para. 5. Opposer further alleges that the term "RIALTO" is "merely descriptive" of "movie theaters"[3] and that applicant's mark "has, in fact, become a generic name of such services." *Id.* at Para. 8. The notice further alleges that applicant knew he was not the only user of the term "RIALTO in connection with movie theaters when he filed this application for registration. Accordingly, his claim of exclusive use in the registration application constitutes a fraud on the Patent and Trademark Office." *Id.* at Para. 9.

In his answer, applicant denied the salient allegations in the notice of opposition, and set forth several purported affirmative defenses, including that "[o]pposer is not using the alleged trademark as a trademark," (Answer, at

---

[3] Although not explicitly pled, we view this claim as also alleging that the mark has not acquired distinctiveness, as further discussed by the parties in their briefs on the merits. In view thereof, we find that the issue of whether applicant's mark has acquired distinctiveness was tried by implied consent pursuant to Fed. R. Civ. P. 15(b)(2).

Affirmative Defense No. 4) as well as laches, acquiescence and estoppel. *Id.,* at Affirmative Defense No. 6.

Both parties submitted briefs, and opposer submitted a reply brief.

**The Record**

The record in this proceeding consists of the pleadings and the file of the application at issue. Additionally, both parties submitted discovery and testimony depositions and notices of reliance, as follows:

1. Portions of discovery deposition of applicant Ky Boyd, dated August 26, 2011, together with certain exhibits thereto, submitted by opposer.

2. Additional portions of discovery deposition of applicant Ky Boyd, for clarification, submitted by applicant.

3. Testimonial deposition of Allen Michaan, dated November 15, 2011, together with exhibits thereto, submitted by opposer.

4. Testimonial deposition of Ky Boyd, dated January 19, 2012, together with exhibits thereto, submitted by applicant.

5. Notice of Reliance on opposer's responses to applicant's first set of interrogatories, submitted by applicant via Notice of Reliance.

**Threshold Jurisdictional Issue: Timeliness of the Notice of Opposition**

The parties dispute whether this opposition proceeding was timely filed.  This is an issue of jurisdictional significance.  *See generally Cass Logistics Inc. v. McKesson Corp.,* 27 USPQ2d 1075 (TTAB 1993).  The deadline to oppose the involved application expired on October 7, 2010.  As noted earlier, this notice of opposition was filed on November 23, 2010.  While a timely initial request for an extension of time to oppose was filed and granted, extending the time to oppose until January 5, 2011, the request was filed not by opposer, but instead by a third party, Lakeside Cinema Partners LLC ("Lakeside Cinema").  After receiving the extension of time to oppose, Lakeside Cinema, instead of filing an opposition, executed a "Transfer Agreement" with opposer, dated November 1, 2010, whereby Lakeside Cinema purported to transfer to opposer, inter alia, its right to initiate and prosecute this opposition.

This series of events raises the issue of whether opposer has the right to claim the benefit of the extension of time granted to Lakeside Cinema.  Applicant argues that no valid rights were actually conferred by Lakeside Cinema via the November 1, 2010 Transfer Agreement with regard to this opposition.  *See* Answer at Para. 2 ("Applicant denies that Lakeside Cinema Partners, LLC is a 'predecessor in interest' to Opposer"); *Id.,* at Affirmative Defense No. 5,

4

("The purported November 1, 2010 'Transfer Agreement' is invalid"); Appl's brief at 12 ("Here, Opposer has no standing to oppose the application because it has not established the necessary privity with the initial opposer, in that it is not a new owner or transferee of rights to the original opposer's marks.").[4]

A party which files an opposition during an extended opposition period must have obtained the extension in its own name or must be in privity with the party that filed the request for an extension of time to oppose. *See* 37 CFR § 2.102(b); *see also* TBMP § 206.01 ("A request for a further extension, or an opposition, filed in a different name will be accepted if a person in privity with the person granted the previous extension files it . . . .") As the Board said in *Cass Logistics,* 27 USPQ2d at 1077:

> An extension of time to oppose is a personal privilege, inuring only to the benefit of the party to which it was granted or a party shown to be in privity therewith. A party cannot claim the benefit of an extension granted to another (unrelated) party. This is so even in those cases where the two parties, although not in privity with one another, share the same objection to the issuance of a registration to applicant....

---

[4] It would have been a better practice for applicant to have brought the jurisdictional issue to the Board for a ruling in an earlier motion. However, jurisdiction remains an issue throughout a proceeding, and we therefore determine it now. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"[T]he concept of privity generally includes, *inter alia,* the relationship of successive ownership of a mark (e.g., assignor, assignee)…." *Id.* § 206.02. To determine whether we have jurisdiction in this opposition, we therefore look to the terms of the Transfer Agreement to see whether Lakeside Cinema, which is the only party that filed a request for extension of time to oppose the subject application, effectively transferred its right to oppose and the benefit of its extension of time to do so.

"Typically, the right to go forward with an opposition may be transferred when the opposer, or its pleaded mark and the goodwill associated therewith, has been acquired by another party." *SDT Inc. v. Patterson Dental Co.,* 30 USPQ2d 1707, 1709 (TTAB 1994).[5] Here, the Transfer Agreement[6] provides, in relevant part:

Recitals

> A. Transferor is the owner of a leasehold interest in and to a movie theater in Santa Rosa, California. For several years prior to Transferor obtaining said leasehold interest, the movie theater was operated by a prior

---

[5] *See also Huffy Corp. v. Geoffrey Inc.,* 18 USPQ2d 1240, 1243 (Comm'r Pat. 1990) (affirming Board decision allowing joinder of opposer where party obtained rights to pleaded mark after opposition instituted); *William & Scott Co. v. Earl's Restaurants Ltd.,* 30 USPQ2d 1870, 1872 (TTAB 1994) (party substitution granted on ground that pleaded mark had been assigned by the party who had filed notice of opposition, and therefore assignee is "real party in interest").

[6] Michaan depo. at 22 and Ex. 6 (affirming signature and terms).

leaseholder as the Rialto Cinemas.[7] When Transferor obtained the leasehold interest, consideration was given to continuing operations under the name Rialto Cinemas, as well as possible adoption of a new name. While considering these alternatives, Transferor learned that an application was filed with the Federal Trademark Office to register a claim to ownership of the alleged mark RIALTO CINEMAS (Application Serial No. 85007256)… Transferor filed a Request for Extension of Time to oppose the Application.

C.   … Transferor has now decided to use a different name to operate its cinema.

### Agreement

1.   Without admitting that the words "RIALTO CINEMAS" qualify for protection as a federally registrable trademark, Transferor hereby assigns, transfers and quitclaims to Transferee any right, title or interest it may have to use the name RIALTO CINEMAS as the name of a movie theater anywhere within the United States of America. This transfer includes any accompanying goodwill that is Associated with the use of the words RIALTO CINEMAS in connection with the operation of a movie cinema.

2.   Transferor also transfers to Transferee its right to oppose the pending Application to register the alleged RIALTO CINEMAS mark pursuant to the extension of time filed by Transferor on September 30, 2010. The parties intend that Transferee shall be the successor-

---

[7] As discussed *infra,* "the prior leaseholder" from whom Lakeside Cinema purports in the Transfer Agreement to have obtained rights to use the mark RIALTO CINEMAS is none other than applicant himself.

in-interest to Transferor's right to pursue said opposition proceeding.

It is clear from the terms of the Transfer Agreement that Lakeside Cinema intended to transfer to opposer its "right, title or interest" including "accompanying goodwill," if any, to the mark RIALTO CINEMAS. It is not clear, however, that Lakeside Cinema ever possessed any rights in the mark for it to transfer. The Transfer Agreement states ambiguously in the recitals that when Lakeside Cinema obtained the leasehold interest to the property formerly known as Rialto Cinemas, "consideration was given to continuing operations under the name Rialto Cinemas, *as well as possible adoption of a new name."* (emphasis added). Without further clarification, the recitals later state that Lakeside Cinema "has now decided to use a different name to operate its cinema." Accordingly, it is not at all clear from the Transfer Agreement that Lakeside Cinema ever used the mark or had any goodwill therein to transfer to opposer. Without evidence of any actual *use* of the mark, Lakeside Cinema had no goodwill to give, regardless of what the Transfer Agreement may *say* or suggest was intended to be transferred. *See Giersch v. Scripps Networks Inc.,* 90 USPQ2d 1020, 1022 (TTAB 2009) (A party may establish its own prior proprietary rights in a mark through actual or constructive use of the

8

mark or through use analogous to trademark use, such as use in advertising brochures, trade publications, catalogues, newspaper advertisements and Internet websites which create a public awareness of the designation as a trademark identifying the party as a source); Trademark Act §§2(d) and 45, 15 U.S.C. §§1052(d) and 1127. *See also T.A.B. Systems v. PacTel Teletrac*, 77 F.3d 1372, 37 USPQ2d 1879 (Fed. Cir. 1996), vacating *Pactel Teletrac v. T.A.B. Systems*, 32 USPQ2d 1668 (TTAB 1994). Without more, we cannot find that there was use of a mark by Lakeside Cinema such as to create trademark rights which could be, or were, transferred to opposer.

Nor is there anything else in the record that would indicate to us that Lakeside Cinema did indeed use the mark RIALTO CINEMAS in a manner that would create rights which could be transferred via the Transfer Agreement to opposer. Indeed, applicant steadfastly protested that he was not aware of anyone other than his own companies using that mark for movie theaters in the United States during the period of time 2000 to 2010. (Boyd testimony depo. at 36). He also testified specifically that he did not license the use of his mark to Lakeside Cinema during or after the time that he leased the property where he had run the "Rialto Cinemas Lakeside" in Santa Rosa, California, the property in which

9

he was referred to as the "prior leaseholder" in the Transfer Agreement:

> Q: Did you ever license the use of the name Rialto Cinemas to the master leaseholder or property owner?
>
> A: No.
>
> Q: Did you ever license the use of the name Rialto Cinemas to Lakeside Cinema Partners, LLC?
>
> A: No.
>
> (Boyd testimony depo. at 66)

Opposer did not submit any evidence to contradict applicant's evidence or to show use of the mark by Lakeside Cinema. Rather, opposer's president indicated he was not aware that Lakeside Cinema, or its owner Dan Takini, had used the mark RIALTO CINEMAS:

> Q: Do you know if Mr. Takini operated a theater called "Rialto Cinemas" at that location?
>
> A: No, I believe he was calling it "The Lakeside Theaters."
>
> (Michaan depo. at 51)

In this regard, opposer's president also admitted that his understanding of the rights transferred by the Transfer Agreement were not based on any *use* of a mark by Lakeside Cinema of the mark RIALTO CINEMAS, or any part thereof, including RIALTO, but rather on a natural right of a

competitor to stop applicant from using what opposer deems to be a generic term:

> Q: What did you understand at the time to be Mr. Takini's right, title and interest to use the mark "Rialto"?
>
> A: In my mind?
>
> Q: Yes.
>
> A: The same right as anyone else would have to use it. And my interest here was to oppose the application to trademark because I felt it was absolutely inappropriate for anyone to trademark the name "Rialto."
>
> (*Id.* at 52-53)

Accordingly, we find that there has been an insufficient showing of use by Lakeside Cinema of the mark that it purports to transfer in the Transfer Agreement to opposer. Without that showing, Lakeside Cinema transferred only the bare right to oppose applicant's registration. Opposer is not a successor to any proprietary interest in the mark. Nor are opposer and Lakeside Cinema in the position of a parent-subsidiary, licensor-licensee, or any other relationship in respect of prior rights in the mark. We therefore hold, on the facts of this case, that acquisition of another's right to oppose, independent of a transfer of rights to a trademark and its associated

goodwill, is an insufficient basis upon which to claim the benefit of the transferor's personal privilege in an extension of time to oppose an application. *See SDT Inc.,* 30 USPQ2d at 1709.  Thus, opposer's filing date on November 23, 2010, is outside the 30 days allotted for initiating an opposition or requesting an extension of time to do so. Since opposer did not file the notice of opposition during the proper time, and is not in privity with the party that did so, we have no jurisdiction.

**DECISION:**  The opposition is dismissed without prejudice to opposer's right to file a petition for cancellation, if otherwise appropriate.